John Mansfield, OSB No. 055390
MansfieldLaw
121 SW Morrison Ave., Suite 400
Portland, OR 97204
971.271.8615
john@mansfieldlaw.net

Jeff Rosenfeld
Alison Kwan
Pro hac vice
Kronenberger Rosenfeld LLP
150 Post St., Ste 520
San Francisco, CA 94108
415.955.1155
jeff@krinternetlaw.com
alison@krinternetlaw.com

Attorney for Defendant Blue Global LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **IOVATION, INC.** a Delaware corporation, Plaintiff, | Case No.: 3:16−cv− 356-SI |
| v. | |
| **BLUE GLOBAL LLC dba BLUE GLOBAL MEDIA,** an Arizona limited liability company<br><br>Defendant | **DEFENDANT BLUE GLOBAL LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM** |

Defendant Blue Global LLC (erroneously sued in this action as "Blue Global, LLC") ("Defendant" or "Blue Global"), in answer to the Complaint for Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing/Account Stated ("Complaint") of Plaintiff iovation, Inc. ("Plaintiff"), herein admits, denies, and avers as follows:

## I. PARTIES, JURISDICTION AND VENUE

1.

Defendant denies that Plaintiff provides viable real-time actionable device reputation intelligence to clients worldwide. Defendant admits that iovation is a Delaware corporation with its principal place of business in Portland, Oregon. Defendant lacks information or belief sufficient to admit or deny the remaining allegations of Paragraph 1 of the Complaint and on that basis denies them.

2.

Defendant admits the allegations in Paragraph 2 of the Complaint.

3.

Paragraph 3 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendant admits that Blue Global consented to jurisdiction in Oregon and denies the remaining allegations in Paragraph 3 of the Complaint.

4.

Paragraph 4 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendant admits that it consented to venue in Portland, Oregon and denies the remaining allegations in Paragraph 4 of the Complaint.

//
//

## II. GENERAL ALLEGATIONS

5.

Defendant admits that Plaintiff and Defendant entered an agreement entitled "iovation ReputationManager™ Service Agreement" on October 31, 2014 (the "Service Agreement"). Defendant admits that Plaintiff and Defendant entered an agreement entitled "iovation ReputationManager™ Service Order" on October 31, 2014 (the "Service Order"). For purposes of this Answer, Defendant refers to the Service Agreement and the Service Order collectively as the "Agreement." Defendant admits that, pursuant to the Agreement, iovation agreed to provide the Services, and that the Agreement defines the "ReputationManager™ 360 ('RM360') Services" to include, among other things, "real-time application connection to the Iovation Device Reputation Authority™ ('DRA') system for device identification, reputation checks, and evaluation of the transaction against your defined business rules." Defendant denies any remaining allegations in paragraph 5 of the Complaint.

6.

Defendant admits that the Service Order states, "Client has the option to cancel this Agreement for ANY reason within 30 days of the Start Date; provided, however, that Client shall remain obligated to pay the Implementation/Trial Period Fee." Defendant admits the Service Order defines "Start Date" as "[t]he date of integration and implementation of the Software and Services." Defendant denies that Plaintiff ever properly integrated and implemented the Software and Services. Defendant denies that the Start Date ever occurred or that the trial period ran from January 28, 2015 to February 26, 2015. Defendant admits that the Agreement states that the "RM360 Monthly Minimum Fee" is "$8,000 per Month." Defendant denies the remaining allegations in Paragraph 6 of the Complaint.

**DEFENDANT'S ANSWER & COUNTERCLAIM**

- 3 -

MANSFIELDLAW
121 SW Morrison, Ste. 400
Portland OR 97204

7.

Defendant admits the Agreement specifies a term of 24 months from integration and implementation of the Software and Services. Defendant admits that the Agreement states that all proceedings arising under the Agreement must be held in Portland, Oregon and that "the substantially prevailing party in such litigation shall be reimbursed by the other party for all fees and expenses incurred, including reasonable attorney's fees, court costs, and accounting fees." Defendant denies the remaining allegations in Paragraph 7 of the Complaint.

8.

Defendant admits the allegations in Paragraph 8 except to the extent Paragraph 8 implies that the Start Date, as that term is defined in the Agreement, had occurred.

9.

Defendant admits that it did not pay certain invoices issued by Plaintiff. Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

10.

Defendant admits that on May 26, 2015, Blue Global made the statements to iovation that it had to "make some budget cuts" and that it had to "cancel" the Agreement. Defendant denies that these statements were Defendant's first notice to iovation of Defendant's termination of the Agreement and Defendant denies the remaining allegations in Paragraph 10 of the Complaint.

11.

Defendant denies the allegations in Paragraph 11 of the complaint.

12.

Defendant admits that Plaintiff has demanded payment from Defendant in the amount of $189,384.79. Defendant denies the remaining allegations in Paragraph 12 of the Complaint.

13.

Defendant denies the allegations in Paragraph 13 of the Complaint.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

14.

Defendant reincorporates by reference its responses to Paragraphs 1 through 13 of the Complaint as if fully set forth herein.

15.

Paragraph 15 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendant admits that the Agreement was a valid enforceable contract. Defendant denies any remaining allegations in Paragraph 15 of the Complaint.

16.

Defendant denies the allegations in Paragraph 16 of the Complaint.

17.

Defendant denies the allegations in Paragraph 17 of the Complaint.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

18.

Defendant reincorporates by reference its responses to Paragraphs 1 through 17 of the Complaint as if fully set forth herein.

19.

Paragraph 19 of the Complaint contains conclusions of law to which no response is required. Defendant admits that both Plaintiff and Defendant were parties to the Agreement.

Defendant denies any remaining allegations in Paragraph 19 of the Complaint.

20.

Defendant denies the allegations in Paragraph 20 of the Complaint.

21.

Defendant denies the allegations in Paragraph 21 of the Complaint.

### THIRD CLAIM FOR RELIEF

### (Account Stated)

22.

Defendant reincorporates by reference its responses to Paragraphs 1 through 21 of the Complaint as if fully set forth herein.

23.

Defendant denies the allegations in Paragraph 23 of the Complaint.

24.

Defendant admits that Plaintiff provided Defendant with certain invoices. Defendant denies the remaining allegations in Paragraph 24 of the Complaint.

25.

Defendant denies the allegations in Paragraph 25.

26.

Defendant denies the allegations in Paragraph 26.

27.

Defendant admits that it did not pay the full amount stated in the invoices sent to Defendant by Plaintiff. Defendant denies the remaining allegations in Paragraph 27.

//

28.

Paragraph 28 of the Complaint contains conclusions of law as to which no response is required. Defendant denies any remaining allegations in Paragraph 28.

**AFFIRMATIVE DEFENSES**

Defendant hereby sets forth below its affirmative defenses. Each defense is asserted as to all causes of action unless otherwise noted. By setting forth these affirmative defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing stated herein is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiff's allegations.

**First Affirmative Defense**

**(Failure to State A Cause of Action)**

As Defendant's first affirmative defense, Defendant asserts that Plaintiff has failed to state a cause of action against Defendant upon which relief may be granted. Plaintiff has failed to plead the prima facie elements of its asserted causes of action, and each of them.

**Second Affirmative Defense**

**(Material Breach)**

As Defendant's second affirmative defense, Defendant asserts that the acts and omissions alleged in the Complaint, as well as the damages and harms alleged therein, are barred by Plaintiff's failure to comply with the terms of the alleged contract and Plaintiff's failure to fulfill all conditions precedent to enforcing the same.

//

//

**DEFENDANT'S ANSWER & COUNTERCLAIM**

- 7 -

MANSFIELDLAW
121 SW Morrison, Ste. 400
Portland OR 97204

### Third Affirmative Defense

### (Excuse)

As Defendant's third affirmative defense, Defendant asserts that it was excused from performing under the alleged contract due to Plaintiff's prior material breach of that alleged contract.

### Fourth Affirmative Defense

### (Mistake)

As Defendant's fourth affirmative defense, Defendant asserts that, to the extent the alleged contract includes or incorporates the terms alleged by Plaintiff in the Complaint, such contract resulted from a mistake and did not express the terms of the actual agreement between the parties.

### Fifth Affirmative Defense

### (Failure of Consideration)

As Defendant's fifth affirmative defense, Defendant asserts that, to the extent the alleged contract includes or incorporates the terms alleged by Plaintiff in the Complaint, such contract was not supported by adequate consideration.

### Sixth Affirmative Defense

### (Frustration of Purpose)

As Defendant's sixth affirmative defense, Defendant asserts that, to the extent the alleged contract includes or incorporates the terms alleged by Plaintiff in the Complaint, the purpose of such contract was frustrated, including by Plaintiff's failure to perform under the Agreement and/or to make performance practicable for Defendant.

//

### Seventh Affirmative Defense

### (Termination/Cancellation of Contract)

As Defendant's seventh affirmative defense, Defendant asserts that, to the extent the alleged contract includes or incorporates terms alleged by Plaintiff in the Complaint, such contract was terminated and/or cancelled by Defendant.

### Eighth Affirmative Defense

### (Abandonment and/or Rescission of Contract)

As Defendant's eighth affirmative defense, Defendant asserts that, to the extent the alleged contract includes or incorporates terms alleged by Plaintiff in the Complaint, such contract was subsequently terminated by abandonment and/or rescission.

### Ninth Affirmative Defense

### (Acquiescence)

As Defendant's ninth affirmative defense, Defendant asserts that Plaintiff's claims are barred in whole or in part by Plaintiff's affirmative conduct, which amounted to an assurance to Defendant that Plaintiff would not pursue the claims alleged.

### Tenth Affirmative Defense

### (Failure to Mitigate)

As Defendant's tenth affirmative defense, Defendant asserts that Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to use ordinary care and diligence to take all necessary steps to mitigate and minimize any damages Plaintiff claims to have sustained and for which it seeks recovery in this action.

//

### Eleventh Affirmative Defense

### (Laches)

As Defendant's eleventh affirmative defense, Defendant alleges that Plaintiff's claims, and each of them, are barred by the doctrine of laches where Plaintiff engaged in an unreasonable delay in asserting his claims.

### Twelfth Affirmative Defense

### (Consent)

As Defendant's twelfth affirmative defense, Defendant alleges that Plaintiff's claims are barred by the doctrine of consent where Plaintiff consented to the termination of the alleged agreement after Plaintiff's failure to perform under the same.

### Thirteenth Affirmative Defense

### (Estoppel)

As Defendant's thirteenth affirmative defense, Defendant alleges that Plaintiff's claims are barred by the doctrine of estoppel, in that Plaintiff, through its false language and conduct, caused Defendant to act in a way in which it would not have otherwise acted.

### Fourteenth Affirmative Defense

### (Setoff & Recoupment)

As Defendant's fourteenth affirmative defense, Defendant alleges that Plaintiff is not entitled to any damages on its claims under the doctrines of setoff and recoupment, in that Defendant may offset any sums it owes to Plaintiff against sums that Plaintiff owes to Defendant, and the result of that offsetting of amounts cancels any amount Defendant is allegedly obligated to pay to Plaintiff.

//

### Fifteenth Affirmative Defense

### (Waiver)

As Defendant's fifteenth affirmative defense, Defendant alleges that Plaintiff's claims are barred by the doctrine of waiver in that Plaintiff knew of its alleged contractual rights and intentionally waived those rights despite its knowledge.

### Sixteenth Affirmative Defense

### (Statute of Fraud)

As Defendant's sixteenth affirmative defense, Defendant alleges that Plaintiff's claim for account stated is barred by the statute of frauds, Del. Code Ann. tit. 6, § 2714, in that the alleged account stated required performance beyond the length of a year and was not reduced to writing.

### Seventeenth Affirmative Defense

### (Unconscionability)

As Defendant's seventeenth affirmative defense, Defendant alleges that Plaintiff's claims are barred by the doctrine of unconscionability to the extent the contract alleged by Plaintiff allowed Plaintiff to knowingly provide its services to Defendant with defects and on an as-is basis and prevented Defendant from terminating such alleged contract based on the defects.

### Eighteenth Affirmative Defense

### (Frustration of Purpose)

As Defendant's eighteenth affirmative defense, Defendant alleges that Plaintiff's claims are barred by the doctrine of frustration of purpose in that Plaintiff failed to provide any viable or useful services, which caused a failure of consideration for the alleged contract and a practical destruction of the expected value of the performance.

### Nineteenth Affirmative Defense

### (Bad Faith)

As Defendant's nineteenth affirmative defense, Defendant alleges that any and all acts, occurrences, and damages alleged or referred to in the Complaint were proximately caused by the bad faith of Plaintiff and/or others in that Plaintiff and/or others failed to deal properly, fairly, honestly, and reasonably with Defendant. Therefore, the comparative bad faith of Plaintiff and/or others reduces Plaintiff's right to recovery, if any, by the amount which its bad faith contributed to the damages alleged.

### ADDITIONAL AFFIRMATIVE DEFENSES

Defendant hereby gives notice that it intends to rely on any additional affirmative defenses that become available or apparent during discovery and thus reserves the right to amend its answer to assert such additional affirmative defenses.

### PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant prays that judgment be rendered in its favor and that Plaintiff take nothing on its claims, that Plaintiff's claims, and each of them, be dismissed in their entirety with prejudice, and that attorney's fees and costs be awarded to Defendant.

### BLUE GLOBAL LLC'S COUNTERCLAIM

Defendant and Counter-Claimant Blue Global LLC, by and through its undersigned counsel, alleges as follows:

//

## INTRODUCTION

1.  Defendant and Counter-Claimant Blue Global LLC ("Blue Global") is an online advertising and technology company. Among other things, Blue Global provides consumer leads to merchants of various goods and services in exchange for referral fees.

2.  Plaintiff and Counter-Defendant iovation, Inc. ("iovation") provides software services to online businesses. iovation's software services seek to identify trustworthy customers for online businesses and to detect customer fraud.

3.  iovation and Blue Global entered into an agreement whereby iovation agreed to provide its online fraud and abuse management software service to Blue Global.

4.  The agreement provided that once iovation integrated and implemented its software service, Blue Global would pay iovation a $10,000 one time trial period fee and a minimum of $8,200 per month after that for a total term of 24 months.

5.  Thereafter, iovation materially breached the agreement by failing to provide Blue Global with a functional version of its software service. More specifically, the software provided by iovation was defective in that it failed to identify known fraudulent customers.

6.  When iovation's software failed to function, Blue Global attempted to work with iovation to fix the defects. Despite Blue Global's efforts, iovation's software service remained defective.

7.  After providing iovation with multiple notices of the defects in the software, and after iovation repeatedly failed to fix the defects, Blue Global terminated the agreement.

8.  Blue Global seeks a return of all amounts paid to iovation prior to the termination of the agreement, Blue Global's costs in supplementing its own functional version of fraud detection software, and Blue Global's costs, attorney's fees, and interest in an amount to be

determined at trial.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this counterclaim under 28 U.S.C. §1367 because the counterclaim is so related to the claims asserted by iovation in its Complaint, over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper under 28 U.S.C. §1391 because, as part of the agreement, the parties expressly deemed the agreement to be executed and performed within this judicial district.

11. This Court has personal jurisdiction over iovation because it has substantial contacts with Oregon and, as such, has personally availed itself of the laws of this State. Furthermore, iovation agreed to submit to the laws and jurisdiction of Oregon in the agreement.

## PARTIES

12. Blue Global is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.

13. iovation is a Delaware corporation with its principal place of business in Portland, Oregon.

## FACTUAL ALLEGATIONS

### BLUE GLOBAL'S BUSINESS

14. Blue Global is an online advertising and technology company.

15. Among other things, Blue Global generates consumer leads for various merchants ("Advertisers").

16. As an example, Blue Global obtains information from consumers interested in

securing short term loans. Blue Global then provides that information to one or more loan providers in exchange for referral commissions.

17. Blue Global obtains consumer information by operating websites where consumers can enter their contact information to obtain more information about Advertisers.

18. As an example, Blue Global operates websites where a consumer interested in securing a loan can enter his/her contact information; Blue Global then seeks to match that consumer with one or more lenders.

19. Blue Global works with independent publishers ("Publishers") to generate consumer leads, and Blue Global compensates those publishers for each bona fide lead provided to Blue Global.

20. As an example, when a Publisher directs a consumer to a website operated by Blue Global, and the consumer enters his/her contact information into the website, Blue Global compensates the Publisher for that lead.

21. Because Blue Global compensates Publishers on a per-lead basis, it is essential for Blue Global to separate bona fide leads from fraudulent leads. Otherwise, dishonest Publishers could enter fabricated consumer information into a Blue Global website and seek compensation from Blue Global for those leads.

22. Based on this concern, Blue Global internally developed software that identifies fraudulent leads.

THE AGREEMENT

23. Because fraudulent leads continued to be a problem even after Blue Global implemented its own fraud detection software, Blue Global began researching additional software that could supplement Blue Global's own software.

24. On October 31, 2014, Blue Global and iovation signed a binding contract composed of the "iovation ReputationManager™ Service Order Prepared for Blue Global LLC" ("Service Order") and the "iovation ReputationManager™ Service Agreement ("Service Agreement"). The Service Order and the Service Agreement are referred to herein collectively as the "Agreement."

25. Under the Agreement, iovation agreed to provide the "Services" to Blue Global and to license the "Software" to Blue Global. The Agreement defines "Services" to include "RM360 real-time application level connection to the iovation Device Reputation Authority™ ('DRA') system for device identification, reputation checks, and evaluation of the transaction against your defined business rules." The Agreement defines "Software" as "the Iovation DevicePrint™ and ReputationManager™ software."

26. The term of the Agreement began on the "Start Date," which the Agreement defined as when iovation implemented and integrated the Software and Services.

27. The Agreement provided for a trial period, under which Blue Global retained the option to cancel the Agreement for any reason within 30 days of the Start Date.

28. Under the Agreement, Blue Global was required to pay iovation a Trial Period Fee of $10,000. Thereafter, Blue Global was required to pay iovation on a per-query basis with a minimum payment of $8,200 per month.

<u>IOVATION'S MATERIAL BREACH OF THE AGREEMENT</u>

29. iovation represented to Blue Global that its Software and Services would work seamlessly with Blue Global's business to identify fraudulent consumer leads.

30. However, following the execution of the Agreement, iovation was unable to integrate or implement its Software and Services as described. Rather, iovation's Software and

Services were fundamentally defective.

31. In particular, iovation's Software and Services failed to detect different consumer leads that Blue Global knew were coming from the same device.

32. On March 21, 2015, Blue Global notified iovation in writing that the Software and Services were not functioning properly.

33. iovation agreed that the leads reported by Blue Global were "at the very least, the same person if not the same device." And iovation conceded it could not fix the problem with the Software and Services, stating, "I don't know that I have any more insight for you than what was given by Matt for your earlier scenario."

34. By May 15, 2015, iovation had still not addressed the defects in the Software and Services and continued to ask Blue Global for additional "examples of devices that you identify internally as the same ones, but iovation is returning unique device IDs for."

35. As the iovation Software and Services did not perform as represented, and as iovation was unable to cure the defects, in May 2015 Blue Global terminated the Agreement.

36. Because fraudulent leads continued to be a problem for Blue Global, and because iovation's Software and Services failed to identify fraudulent leads, Blue Global invested resources in adding functionality to its own internally-developed fraud detection software. The supplemented software program identifies fraudulent leads that iovation's Software and Services missed.

37. As a direct and proximate result of iovation's breaches, Blue Global was damaged.

//

//

DEFENDANT'S ANSWER & COUNTERCLAIM

- 17 -

MANSFIELDLAW
121 SW Morrison, Ste. 400
Portland OR 97204

## FIRST CLAIM FOR RELIEF

## (Breach of Written Contract Against iovation)

38. Blue Global repeats and incorporates by reference the allegations contained in the preceding paragraphs.

39. Blue Global and iovation entered into a valid written Agreement on October 31, 2014.

40. The Agreement required iovation to implement and integrate the Software and Services with the purpose of detecting fraudulent consumer leads. This requirement was a material aspect of the Agreement.

41. iovation materially breached the Agreement by failing to implement and integrate functional Software and Services. Instead, iovation only provided Blue Global with defective Software and Services that failed to correctly identify fraudulent consumer leads submitted by the same person and device.

42. Until iovation's material breach of the Agreement, Blue Global performed all of its obligations under the Agreement.

43. While Blue Global provided iovation with written notice of the defects in the Software and Services, iovation was unable to cure the defects.

44. As a direct and proximate result of iovation's breaches, which are ongoing, Blue Global has been damaged in the sum of the amounts paid to iovation for the deficient iovation Services plus the additional costs Blue Global incurred in developing its own customer fraud detection software.

//

//

## PRAYER FOR RELIEF

WHEREFORE, Counter-Claimant respectfully requests that the Court enter judgment in favor of Counter-Claimant Blue Global LLC and against Counter-Defendant iovation, Inc. and award the following relief to Blue Global and against iovation:

A. Damages in an amount to be proved at trial, along with pre-judgment and post-judgment interest.

B. Blue Global's costs and attorney's fees.

C. Such other relief as the Court deems just and equitable.

Dated March 3, 2016

By /s/ John Mansfield
John Mansfield, OSB No. 055390
MansfieldLaw
121 SW Morrison Ave., Suite 400
Portland, OR 97204
971.271.8615
john@mansfieldlaw.net

Jeff Rosenfeld
Alison Kwan
Pro hac vice
Kronenberger Rosenfeld LLP
150 Post St., Ste 520
San Francisco, CA 94108
415.955.1155
jeff@krinternetlaw.com
alison@krinternetlaw.com

Attorney for Defendant Blue Global LLC

